IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-477-FL

| | | |
|---|---|---|
| UBA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| THYSSENKRUPP ELEVATOR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for summary judgment (DE 27) and defendant's motion to exclude portions of the affidavit of plaintiff's member and manager, Dr. Daniel Uba ("Uba"), upon which plaintiff relies. (DE 34). The motions have been fully briefed, and in this posture, issues raised are ripe for ruling. For the following reasons, defendant's motion to exclude is granted in part and plaintiff's summary judgment motion is denied.

## BACKGROUND

Plaintiff initiated this action August 18, 2015, in the Superior Court of Cumberland County, North Carolina, seeking compensatory damages, punitive damages, specific performance, costs of court, and attorney's fees arising from defendant's alleged breach of contract and violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq. Thereafter, defendant removed the case, centered around a dispute concerning repair of an elevator, to this court pursuant to 28 U.S.C. §§ 1332, 1441, & 1446.

Following a period of discovery, plaintiff filed the instant motion August 9, 2016, accompanied by a statement of material facts, appendix thereto, and memorandum of law. Plaintiff relies upon the following materials: a work order executed by plaintiff's owner; the affidavit of defendant's employee Barbara Sullivan ("Sullivan"); e-mail correspondence between the parties; deposition testimony of defendant's employee Jeff Slatcoff, Jr. ("Slatcoff"); and the affidavit of Uba.

Defendant responded in opposition to the instant motion, and separately filed a motion to exclude portions of Uba's affidavit. With the exception of that affidavit, defendant relies upon the same evidence offered by plaintiff and, in addition, a note written by an unidentified employee of plaintiff together with the deposition of plaintiff's employee, Carolyn Chaple ("Chaple").

Plaintiff also filed a document styled "objection to inadmissible facts," pursuant to Federal Rule of Civil Procedure 56(c)(2), where plaintiff raises issues not addressed in its memorandum in support of summary judgment. (DE 39). Defendant requested opportunity to respond, (DE 42), which the court construed as a motion for leave to sur-reply, which motion was allowed.

## STATEMENT OF FACTS

The facts in the light most favorable to defendant may be summarized as follows. Two inoperative elevators are located on the premises of plaintiff's business in Fayetteville, North Carolina. In an effort to have one of the two elevators repaired, plaintiff requested a quote from defendant to perform certain work, the scope of which the parties dispute.

After inspecting the elevator, defendant, through its representative, in conversations with two of plaintiff's employees, explained that, for a fee, it was willing to remove certain parts from the elevator and transport the parts to an independent machine shop. Defendant's representative

explained that the machine shop would troubleshoot the malfunctioning parts and quote a price to complete all necessary repairs.

After the foregoing conversations, defendant prepared a work order ("11/8/2012 work order"), which constituted defendant's offer to provide certain services in exchange for $8,428.00. The 11/8/2012 work order provides, in relevant part:

> [defendant] will provide the necessary labor and material to perform the following scope of work on (1) elevator:
>
> - Remove the Generator and Exciter from the elevator machine.
> - Take the Generator and Exciter to be repaired.
> - Replace Generator and Exciter back to elevator machine.
>
> **NOTE: This quote and work order is the first part of troubleshooting the elevator. This quote is to perform only labor and repairs stated above. After repairing the generator, [defendant] will be able to troubleshoot further to see any other problems the elevator might have. Any other labor and repairs that need to be done outside the scope of work stated above, will be quoted separately at that time.**

(DE 29-2 at 3).[1]  The 11/8/2012 work order called for payment in two installments, requiring plaintiff to pay 75% of the contract price up front and the remaining 25% after defendant's full performance.  On December 5, 2012, plaintiff's owner, Uba, executed that 11/8/2012 work order and paid 75% of the contract price in accord therewith.

Pursuant to the 11/8/2012 work order, defendant removed the elevator parts and transported them to a third-party repair facility sometime in December 2012.  Based upon this delivery, defendant sent an invoice for the final 25% fee claiming that it had discharged its duties under the 11/8/2012 work order.  Defendant also sent a second work order offering, for a fee of $32,305.00, "[r]einstallation of repaired [g]enerator. [r]einstallation of repaired [e]xciter, [and to t]ry to get

---

[1]  A copy of the 11/8/2012 work order is attached at Appendix A hereto.

3

elevator back to working/running service" ("12/11/2013 work order") (DE 29-6).[2] In a series of e-mails following, plaintiff denied that defendant discharged its duties under the 11/8/2012 work order. Nonetheless, plaintiff issued a check to defendant for the remaining 25% fee. Plaintiff did not enter into the 2/11/2013 work order. Consequently, defendant performed no further work on plaintiff's elevator or parts. This action followed.

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

---

[2] A copy of the 2/11/2103 work order is attached at Appendix B.

4

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.      Analysis

1.      Defendant's Motion to Exclude

Before turning to the merits of plaintiff's motion, the court first addresses defendant's motion to exclude portions of Uba's written testimony concerning his beliefs as to proper interpretation of the 11/8/2012 work order. In particular, defendant objects to testimony that defendant unambiguously is required under the 11/8/2012 work order to repair plaintiff's elevator.

5

It is the province of the court to determine the existence of ambiguities in a contract.  <u>See</u> <u>State v. Phillip Morris USA Inc.</u>, 363 N.C. 623, 631 (2009) ("Interpreting a contract requires <u>the</u> <u>court</u> to examine the language of the contract itself for indications of the parties' intent at the moment of execution.") (internal citation and quotation omitted) (emphasis added).  With respect to those portions of the affidavit reciting Uba's conclusions from an independent reading of the 11/8/2012 work order, his testimony is not factual in nature, as required by the Federal Rules of Civil Procedure.  Fed. R. Civ. P.  56(c)(4) ("An affidavit or declaration used to support or  oppose a motion must . . . set out <u>facts</u> that would be admissible in evidence . . . .") (emphasis added).  Instead, numerous statements in Uba's affidavit simply echo plaintiff's favored interpretation of the 11/8/2012 work order.

For the foregoing reasons, defendant's motion to exclude is granted in part, with respect the last sentence of paragraph four purposefully stating "for [defendant] to remove, take away, repair, and replaced [plaintiff's] generator and exciter to and from [plaintiff's] elevator machine."  The court also strikes the entirety of paragraphs seven, 10, and 11, variously concerning what defendant is required to do pursuant to the documentation and what the contract requires by its terms.

Uba also briefly describes the series of events preceding his decision to sign the 11/8/2012 work order, and, additionally, he states that defendant did not repair or replace plaintiff's elevator. Based on the extant record, the foregoing statements are relevant, grounded in Uba's personal knowledge, and succinctly presented.  Therefore, to the extent defendant moves, pursuant to Federal Rule of Evidence 403, to exclude statements not specifically excluded above, the motion is denied.

6

2.      Plaintiff's Motion for Summary Judgment

        a.      Breach of contract claim

Plaintiff claims entitlement to summary judgment for its breach of contract claim based upon

defendant's failure to fully restore its elevator to working order.  Under North Carolina law, the

"elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the

terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations

omitted).  To constitute a valid contract, "the parties must assent to the same thing in the same sense,

and their minds must meet as to all the terms." Boyce v. McMahan, 285 N.C. 730, 734 (1974); see

Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds

of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent,

and they must assent to the same thing, in the same sense.").

        "Interpreting a contract requires the court to examine the language of the contract itself for

indications of the parties' intent at the moment of execution."  State v. Phillip Morris USA Inc., 363

N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that

the purport of a written instrument is to be gathered from its four corners, and the four corners are

to be ascertained from the language used in the instrument." Carolina Power & Light Co. v.

Bowman, 229 N.C. 682, 693–94 (1949).

        "Where the terms of the contract are not ambiguous, the express language of the contract

controls in determining its meaning and not what either party thought the agreement to be."

Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976). If language in a contractual

provision in dispute is ambiguous, by contrast, "parol or extrinsic evidence may be introduced to

show what was in the minds of the parties at the time of making the contract or executing the

7

instrument, and to determine the object for or on which it was designed to operate." <u>Root v. Allstate Ins. Co.</u>, 272 N.C. 580, 587 (1968). However, "[n]o ambiguity . . . exists unless, in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend." <u>Penn. Nat'l Mut. Ins. Co. v. Strickland</u>, 178 N.C. App. 547, 550 (2006); <u>accord</u> <u>Wachovia Bank Trust Co. v. Westchester Fire Ins. Co.</u>, 276 N.C. 348, 354 (1970).

In this case, the 11/8/2012 work order requires defendant to "[r]emove the [g]enerator and [e]xciter from the elevator machine[; t]ake the [g]enerator and [e]xciter to be repaired, [and r]eplace [the g]enerator and [e]xciter back to [the] elevator machine." (DE 29-2). The parties do not dispute that defendant discharged its duty to remove the generator and exciter. However, where the it requires that defendant "take the [g]enerator and [e]xciter to be repaired[,]" the 11/8/2012 work order is ambiguous. (<u>Id.</u>). Specifically, by its use of the passive voice phrase, "to be repaired[,]" the 11/8/2012 work order fails to specify who the parties intended to perform any contemplated repairs. (<u>Id.</u>)

The remaining language in the 11/8/2012 work order does not resolve this ambiguity. For example, the 11/8/2012 work order contains the sentence, "[t]his quote is to perform only labor and repairs stated above[]." (<u>Id.</u>). The foregoing arguably contemplates the possibility that, to complete the 11/8/2012 work order, defendant must perform repairs. Alternatively, the sentence does not rule out the possibility that a third party should perform the repairs, or that the number of repairs thereby described is, in fact, zero.

Similarly, the statement "[a]fter performing the repairs, [defendant] will be able to troubleshoot further . . . [,]" arguably implies that defendant agreed to perform repairs. (<u>Id.</u>)

8

However, the foregoing sentence <u>follows</u> another sentence stating that the 11/8/2012 work order embraces "only labor and repairs stated <u>above</u>." (<u>Id.</u>) (emphasis added). Because the former sentence is not "above" the latter in its text, the 11/8/2012 work order arguably directs the reader to ignore the former sentence in determining the scope of defendant's duties under the 11/8/2012 work order.

Finally, the 11/8/2012 work order requires defendant to "[r]eplace the [g]enerator and [e]xciter back to [the] elevator machine[.]" (<u>Id.</u>) However, in light of provisions contemplating a multi-phased repair process, the foregoing language does not unambiguously exclude the possibility that the 11/8/2012 work order commits defendant to remove and replace the elevator while leaving a third-party to repair the generator and exciter under a separately negotiated contract.

Therefore, because ambiguity exists within the four corners of the 11/8/2012 work order, the court may consider parol evidence "to show what was in the minds of the parties at the time of making the contract . . ." <u>Root</u>, 272 N.C. at 587 (1968). Defendant offers two items of parol evidence to support its reading of the 11/8/2012 work order. First, a handwritten note penned by an unidentified employee of plaintiff states:

> [e]levator - [f]irst repair generator (remove + transport + labor) $3000 – $4000 . . .
> Jeff (919) 696-4998

(DE 32-4). The parties agree that this note constitutes a contemporaneous record of a conversation with Slatcoff, defendant's customer liaison. However, the note does not clarify any provision of the 11/8/2012 work order. Specifically, the note's reference to "labor" could refer, as plaintiff suggests, to defendant's obligation to repair the elevator, or, as defendant suggests, to an obligation derivative of defendant's obligation to "remove" and "transport" parts of plaintiff's elevator to a third-party repair shop.

Finally, Slatcoff testified in his deposition that he explained the requirements of the 11/8/2012 work order to plaintiff's employees before plaintiff signed it. Specifically, Slatcoff stated that, in the only conversations he had with anyone associated with plaintiff, he explained to Sullivan and Chaple, plaintiff's employees, that:

> we were going to need to get a signed . . . check [from plaintiff] authorizing [defendant] to provide labor to take the damaged generator out of there and get it to a machine shop that [defendant] used to get a quote for repairing it.

(DE 32-6 at 18) (emphasis added). Nowhere in the record does plaintiff deny that this conversation took place or that plaintiff's understanding of the 11/8/2012 work order differed from Slatcoff's explanation at the time of signing. Therefore, viewed in the light most favorable to defendant, parol evidence, in the form of Slatcoff's explanation of the 11/8/2012 work order's intended meaning, may tend to support a finding that defendant was not required to repair plaintiff's elevator.

In support of a contrary argument, plaintiff observes that, under North Carolina law, "[o]ne of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing." Chavis v. Southern Life Ins. Co., 318 N.C. 259, 262 (1986). To apply this rule, North Carolina courts consider "the language of the contract, the apparent purpose of the contract and the situation of the parties at the time of its execution . . ." Adder v. Holman & Moody, Inc., 288 N.C. 484, 493 (1975) (holding that where a customer possessed pending negligence claims against the builder of a drag racing car, a subsequently executed contract in which the customer waived defenses to indebtedness based on poor workmanship did not constitute a waiver of the pending negligence claims because the builder drafted the waiver and knew about the pending negligence action at the time of drafting).

Based on the text, purpose, and situation of the parties surrounding the 11/8/2012 work order, plaintiff has not established that the words "to be repaired" must be construed to mean "to be repaired by defendant." Specifically, the 11/8/2012 work order's critical text, "to be repaired[,]" is open ended and leaves open the possibility that any number of individuals might complete the contemplated repairs. Second, where the 11/8/2012 work order's evident purpose is to initialize some manner of multi-phased transaction, plaintiff's preferred construction mandating that defendant restore plaintiff's elevator to working order is inconsistent with a reading of the 11/8/2012 work order that contemplates multiple phases of repair and troubleshooting. Accordingly, construing ambiguities in plaintiff's favor does not establish that the 11/8/2012 work order obligates defendant to restore plaintiff's elevator to working order.

For the foregoing reasons, a triable issue of fact exists regarding interpretation of the 11/8/2012 work order. Therefore, plaintiff's motion for summary judgment regarding its breach of contract claim must be denied.

b.    Specific performance

Because plaintiff's claimed entitlement to specific performance is predicated upon defendant's underlying alleged breach of contract, plaintiff's motion for summary judgment regarding specific performance must be denied. Additionally, specific performance is not an available remedy in this matter even if plaintiff successfully demonstrates at trial that its reading of the 11/8/2012 work order is correct.

Under North Carolina law, specific performance is available as a remedy for breach of contract only if the aggrieved party does not have an adequate remedy at law. Bell v. Smith Concrete Prods., Inc., 263 N.C. 389, 390 (1965). To determine whether a remedy at law is adequate,

11

North Carolina courts consider the difficulty for the court in determining a proper damages award, difficulty for a plaintiff in collecting damages, and whether the party seeking specific performance could use monetary damages to purchase an adequate substitute for the promised performance. Whalehead Properties v. Coastland Corp., 299 N.C. 270, 283 (1980).

A survey of cases decided in the Supreme Court of North Carolina reveals that North Carolina courts typically deem a damages award inadequate only in contracts to convey real property, Crawford v. Allen, 189 N.C. 434, 526 (1925), transactions involving objects that are unique or difficult to value, Paddock v. Davenport, 107 N.C. 710, 710 (1890), and disputes involving divorce and child custody, Cavenaugh v. Cavenaugh, 317 N.C. 652, 658 (1986). Plaintiff has cited no decision in which a North Carolina court granted specific performance as a remedy for breach of a contract for services, and the court is aware of none. Additionally, while the North Carolina Supreme Court has not addressed the question in any case of which the court is aware, the North Carolina Court of Appeals has noted the existence of a "policy against specific enforcement of personal services contracts," Williams v. Habul, 219 N.C. App. 281, 291 (2012).

Moreover, the North Carolina Supreme Court has turned to the Restatement (second) of Contracts for guidance in determining the content of North Carolina contract law. See e.g., Bledsole v. Johnson, 357 N.C. 133, 138 (2003); Raritan River Steel Co. v. Cherry, Bekaert & Holland, 329 N.C. 646, 651 (1991). Where it advises that "[a] promise to render personal service will not be specifically enforced," Restatement (second) of Contracts § 367(1), the Restatement is in accord with North Carolina public policy as described by the court of appeals. See Williams, 219 N.C. App. at 291. The official comment accompanying § 367 notes that the basis for denying specific performance in services contracts includes "the undesirability of compelling the continuance of

12

personal association after disputes have arisen and confidence and loyalty are gone[.]" Restatement (second) of Contracts § 367 cmt. (a). Additionally, specific performance is undesirable to the extent it imposes upon the court an ongoing duty to supervise performance by an unwilling party. Id. § 366.

In this case, even if plaintiff succeeds on its breach of contract claim, the record discloses no basis to conclude that an award of damages would fail to compensate plaintiff's loss. In particular, where plaintiff urges that a damages award is inadequate because damages would not reunite plaintiff with its elevator parts, plaintiff misconstrues the relevant sense in which a remedy at law must be inadequate to justify the remedy of specific performance. In contrast to actions involving land, unique property, or child custody, in which cases the subject of litigation is clearly incommensurable with monetary compensation, plaintiff's alleged injuries are necessarily economic in nature. See Griffin v. Wheeler-Leonard & Co., Inc., 290 N.C. 185, 200–201 (1976) (where a construction company allegedly breached an implied warranty through substandard workmanship, plaintiff was entitled to damages either for the difference in value between the actual property and the value of the property as warranted or for the cost to bring the property into compliance with the implied warranty). Such injuries are adequately redressable by a damages award sufficient to compensate plaintiff's frustrated reasonable expectations under the 11/8/2012 work order. See Fulcher v. Nelson, 273 N.C. 221, 226 (1968) (stating that an aggrieved party's expectation interest constitutes the measure of damages for breach of contract). Therefore, plaintiff's claimed entitlement to specific performance fails as a matter of law since plaintiff cannot demonstrate that a remedy at law is inadequate. See Bell, 263 N.C. at 390.

Furthermore, North Carolina's policy against granting specific performance in personal services contracts constitutes an additional and independent basis to grant summary judgment for defendant on the issue of specific performance. See Williams, 219 N.C. App. at 291. Specifically, as described in the Restatement, granting specific performance in this case would effect the undesirable consequence of "compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone[.]" See Restatement (second) of Contracts § 367 cmt. a. Additionally, granting specific performance would impose upon the court an ongoing and unnecessary duty to monitor defendant's compliance with the court's order. As set forth above, each of these consequences is inconsistent with North Carolina public policy; therefore, an order granting specific performance is unwarranted here. See Id.; Williams, 219 N.C. App. at 291.

For the foregoing reasons, plaintiff's motion for summary as to specific performance is denied.

> c.    UDPTA

Finally, plaintiff moves for summary judgment regarding its claims under the UDPTA. Because plaintiff has not set forth facts to support a UDPTA violation, plaintiff's motion must be denied.

North Carolina law provides a private right of action, treble damages, and attorney's fees to any person injured by a violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDPTA"). N.C. Gen Stat. 75-1.1. et seq. To succeed under the UDTPA, a plaintiff must show: "(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused actual to the plaintiff." Bumpers v. Community Bank of Northern Virginia, 367 N.C. 81, 88 (2013).

North Carolina law does not permit a plaintiff "to multiply the damages for an ordinary breach of an agreement by re-characterizing the breach as a violation of the UDPTA." PCS Phosphate Co., Inc., v. Norfolk Southern Corp., 559 F.3d 212, 224 (4th Cir. 2009); see Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (citing Branch Banking & Trust Co. v. Thompson, 109 N.C. App. 53, 62 (1992)). Accordingly, "a mere breach of contract, even if intentional" cannot serve as the basis for a UDPTA claim unless a plaintiff can show "substantial aggravating circumstances attending the breach." PCS Phosphate Co., Inc., 559 F.3d at 224. The Fourth Circuit has opined that to demonstrate the required aggravating circumstances, a plaintiff must show "deception either in the formation of the contract or in the circumstances of its breach." Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989).

The evidence of record discloses that plaintiff cannot recover under the UDPTA since the alleged conduct at issue constitutes, at most, a mere breach of contract. Specifically, the evidence demonstrates that even if defendant's conduct ultimately constitutes non-performance of the 11/8/2012 work order, such conduct was not deceptive. That is, there is no indication that defendant deceived plaintiff when it submitted the 11/8/2012 work order for plaintiff's consideration, and plaintiff does not dispute that defendant at least partially performed the requirements of the 11/8/2012 order when it removed parts from plaintiff's elevator. Further, where plaintiff attempts to re-characterize defendant's conduct as holding plaintiff's elevator parts for "ransom," plaintiff overstates its case. In particular, defendant's offer to return the malfunctioning elevator parts (see DE 32-5) negates plaintiff's theory that defendant attempted to hold plaintiff's elevator parts for "ransom." Additionally, although defendant remains unwilling to repair and reinstall the parts, this unwillingness is grounded, not in an attempt to extort plaintiff, but in defendant's belief that the

15

11/8/2012 work order does not require such action, which, as set forth above, is a plausible reading of the 11/8/2012 work order.

For the foregoing reasons, plaintiff's motion for summary judgment as to its UDPTA claim is denied.

C.    Plaintiff's Rule 56(c)(2) Objection

In presenting the issues for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  "In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial."  Kennedy v. Joy Techs., Inc., 269 Fed.Appx. 302, 308 (4th Cir. 2008) (citing Maryland Highways Contractors Ass'n, Inc. v. State of Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991)).  Irrelevant evidence is inadmissible at trial.  Fed. R. Evid. 402.

Because defendant has established the existence of a genuine dispute of material fact on grounds unrelated to the existence of a prior contract between the parties, the court need not resolve at this juncture issues raised by plaintiff pertinent to defendant's references in defense of motion to a prior agreement between the parties in which plaintiff agreed to pay defendant to fully modernize one of plaintiff's elevators in exchange for $125,000.00.  While denying that objection now as MOOT, plaintiff is of course free to raise the objection later, in the trial context.

## CONCLUSION

Based on the foregoing, defendant's motion to exclude (DE 34) is GRANTED IN PART as set forth herein.  Plaintiff's motion for summary judgment (DE 27) is DENIED.  Plaintiff's objection is DENIED as MOOT.  The parties are DIRECTED to confer and file a joint notice on the docket on or before February 14, 2017, specifying three alternative dates for a telephonic conference

pursuant to Federal Rule of Civil Procedure 16 to discuss the next stage(s) of this case. Particularly, the court is interested in the status of any settlement negotiations, where mediation previously was ordered yet nothing appears on the docket evidencing conduct of same. In the event it is reported that mediation previously was undertaken, the court will solicit the parties' views as to whether further efforts may aid resolution of this case short of trial. Given the court's pronouncements upon whether plaintiff may prevail upon claim for specific performance and for relief under the UDPTA, the court will hear further from the parties on issues remaining for trial, with deference also to Rule 1 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 9th day of February, 2017.


LOUISE W. FLANAGAN
United States District Judge

17

# APPENDIX A

# ThyssenKrupp Elevator
## Americas Business Unit

# Work Order.



ThyssenKrupp

| | | | |
|---|---|---|---|
| Date: | 11/08/2012 | Purchaser: | Uba, LLC |
| Location: | Green St. Office Building | Contact Name: | Daniel Uba |
| Address: | 109 Green St. | Title: | Building Owner |
| City: | Fayetteville, NC 28302 | Company: | Uba, LLC |
| Contract #: | 029IE2820 | Address: | 5785 Morganton Road |
| Telephone: | (910)321-6189 | City/ST/ZIP: | Fayetteville, NC 28314 |
| Equipment ID: | (1) Elevator | Phone: | (910)321-6189 |
| RWO Title: | Misc. Elevator Repairs | Facsimile: | |

Purchaser authorizes ThyssenKrupp Elevator Corporation to perform the following described work on the following elevator(s) in the above building:

**MISC. ELEVATOR REPAIRS**

TKE will provide the necessary labor and material to perform the following scope of work on (1) elevator:

- Remove the Generator and Exciter from the elevator machine.

- Take the Generator and Exciter to be repaired.

- Replace Generator and Exciter back to elevator machine

**NOTE: This quote and work order is the first part of troubleshooting the elevator. This quote is to perform only labor and repairs stated above. After repairing the generator, we will be able to troubleshoot further to see any other problems the elevator might have. Any other labor and repairs that need to be done outside the scope of work stated above, will be quoted separately at that time.**

Purchaser agrees to pay the sum of: __Eight Thousand Four Hundred Twenty-Eight ($8,428.00)__ Dollars which includes all applicable taxes. Delivery and shipping is included. All work is to be performed during regular working days and hours, unless otherwise indicated herein. No permits or inspections by others are included in this work, unless otherwise indicated herein.

To indicate acceptance of this work order, please sign and return one (1) original of this agreement to the address shown below. Upon receipt of your written authorization and required materials and/or supplies, we shall implement the work order.

Unless otherwise stated, you agree to pay as follows: __75%__ upon signed acceptance and __25%__ upon completion.

This Work Order is submitted for acceptance within 30 days from the date executed by ThyssenKrupp Elevator Corporation.

Purchaser's acceptance of this Work Order together with the terms and conditions printed on subsequent pages hereof and which are expressly made a part of this proposal and agreed to, will constitute exclusively and entirely the agreement for the work herein described. All prior representations or agreements regarding this work, whether written or verbal, will be deemed to be merged herein, and no other changes in or additions to this agreement will be recognized unless made in writing and properly executed by both parties. This Work Order specifically contemplates work outside the scope of any maintenance contract currently in effect between the parties; any such contract shall be unaffected by this Work Order.

No agent or employee shall have the authority to waive or modify any of the terms of this agreement without the written approval of an authorized ThyssenKrupp Elevator Corporation manager.

TKE-WO 03/10

Page 1 of 3

| ThyssenKrupp Elevator Corporation: | Uba, LLC | ThyssenKrupp Elevator Corporation Approval: |
|---|---|---|
| By: _____<br>(Signature of ThyssenKrupp Elevator Representative)<br><br>**Jeff Slatcoff**<br>Account Manager<br>Return<br>Address: 5995 Chapel Hill Rd. Suite 101<br>Raleigh, NC 27606<br>Tele: (919)851-8557<br>Fax: (866)720-6930<br><br>11/08/2012<br>(Date Submitted) | By: _Daniel C Uba_____<br>(Signature of Authorized Individual)<br><br>Daniel C Uba<br>(Print or Type Name)<br><br>Medical Director/Owner<br>(Print or Type Title)<br><br>12/5/12<br>(Date of Approval) | By: _____<br>(Signature of Authorized Individual)<br><br>Chris Boerner<br>(Print or Type Name)<br><br>Branch Manager<br>(Print or Type Title)<br><br>_____<br>(Date of Approval) |

## Terms and Conditions.

ThyssenKrupp Elevator Corporation assumes no responsibility for any part of the elevator equipment except that upon which work has been done under this agreement. No work, service, examination or liability on the part of us other than that specifically mentioned herein is included or intended. It is agreed that ThyssenKrupp Elevator Corporation does not assume possession or control of any part of the equipment and that such remains Purchaser's exclusively as the owner, lessor, lessee, possessor, or manager thereof.

Our performance of this contract is contingent upon your furnishing us with any necessary permission or priority required under the terms and conditions of government regulations affecting the acceptance of this order or the manufacture, delivery or installation of the equipment.

ThyssenKrupp Elevator Corporation has made no examination of, and assumes no responsibility for, any part of the elevator equipment except that necessary to do the work described in this proposal.

It is agreed that ThyssenKrupp Elevator Corporation's personnel shall be given a safe place in which to work and ThyssenKrupp Elevator Corporation reserves the right to discontinue our work in the building whenever, in our sole opinion, this provision is being violated.

You agree that in the event asbestos material is knowingly or unknowingly removed or disturbed in any manner at the job site by parties other than employees of ThyssenKrupp Elevator Corporation or those of our subcontractors, the work place will be monitored, and prior to and during our presence on the job, Purchaser will certify that asbestos in the environment does not exceed .01 fiber per cc as tested by NIOSH 7400. In the event our employees, or those of our subcontractors, are exposed to an asbestos hazard, PCB's or other hazardous substances resulting from work of individuals other than our employees, or those of its subcontractors, you agree to indemnify, defend, and hold ThyssenKrupp Elevator Corporation harmless from any and all claims, demands, lawsuits, and proceedings brought against us, or our employees resulting from such exposure. You recognize that your obligation to ThyssenKrupp Elevator Corporation under this clause includes payment of all attorneys' fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits. Removal and disposal of asbestos containing material is your responsibility.

Unless otherwise agreed, it is understood that the work will be performed during regular working hours of the trades involved. If overtime is mutually agreed upon, an additional charge at our usual rates for such work shall be added to the contract price.

In consideration of ThyssenKrupp Elevator Corporation performing the services herein specified, Purchaser expressly agrees to indemnify, defend, save harmless, discharge, release and forever acquit ThyssenKrupp Elevator Corporation, its employees, officers, agents, affiliates, and subsidiaries from and against any and all claims, demands, suits, and proceedings brought against ThyssenKrupp Elevator Corporation, its employees, officers, agents, affiliates and subsidiaries for loss, property damage (including damage to the equipment which is the subject matter of this Work Order), personal injury or death that are alleged to have been caused by the Purchaser or any others in connection with the presence, use, misuse, maintenance, installation, removal, manufacture, design, operation or condition of the equipment covered by this Work Order, or the associated areas surrounding such equipment. Purchaser's duty to indemnify does not apply to the extent that the loss, property damage (including damage to the equipment which is the subject matter of this Work Order), personal injury or death is determined to be caused by or resulting from the negligence of ThyssenKrupp Elevator Corporation and/or its employees. Purchaser recognizes that its obligation to ThyssenKrupp Elevator Corporation under this clause includes payment of all attorney's fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits.

Insurance. Purchaser expressly agrees to name ThyssenKrupp Elevator Corporation along with its officers, agents, affiliates and subsidiaries as additional insureds in Purchaser's liability and any excess (umbrella) liability insurance policy(ies). Such insurance must insure ThyssenKrupp Elevator Corporation, along with its officers, agents, affiliates and subsidiaries for those claims and/or losses referenced in the above paragraph, and for claims and/or losses arising from the sole negligence or responsibility of ThyssenKrupp Elevator Corporation and/or its officers, agents, affiliates and subsidiaries. Such insurance must specify that its coverage is primary and non-contributory. Purchaser hereby waives the right of subrogation. ThyssenKrupp Elevator Corporation shall not be liable for any loss, damage or delay caused by acts of government, labor, troubles, strikes, lockouts, fire, explosions, theft, riot, civil commotion, war, malicious mischief, acts of God, or any cause beyond its control, and in no event shall ThyssenKrupp Elevator Corporation be liable for any consequential, special, or indirect damages. ThyssenKrupp Elevator Corporation shall automatically receive an extension of time commensurate with any delay regarding the work called for in this Work Order and Purchaser expressly agrees to release and

TKE - WO 03/10

Uba, LLC

By: _____
(Initial by Authorized Individual)
TK-29-2011-RO

discharge ThyssenKrupp Elevator Corporation from any and all claims for consequential, special or indirect damages arising out of the performance of this Work Order.

Should loss of or damage to ThyssenKrupp Elevator Corporation's material, tools or work occur at the erection site, Purchaser shall compensate ThyssenKrupp Elevator Corporation therefore, unless such loss or damage results from our own acts or omissions.

Purchaser agrees that all existing equipment removed by ThyssenKrupp Elevator Corporation shall become the exclusive property of ThyssenKrupp Elevator Corporation.

ThyssenKrupp Elevator Corporation retains title to all equipment supplied by us under this contract, and a security interest therein, (which, it is agreed, can be removed without material injury to the real property) until all payments under the terms of this contract, including deferred payments and any extension is thereof, shall have been made. In the event of any default by you in the payment, under any other provision of this contract, ThyssenKrupp Elevator Corporation may take immediate possession of the manner of its attachment to the real estate or the sale, mortgage, or lease of the real estate. Pursuant to the Uniform Commercial Code, at ThyssenKrupp Elevator Corporation's request, Purchaser agrees to join with ThyssenKrupp Elevator Corporation in executing any financing or continuation statements, which may be appropriate for us to file in public offices in order to perfect our security interest n such equipment.

Certificates of Workmen's Compensation, Bodily Injury and Property Damage Liability Insurance coverage will be furnished to purchaser only upon written request. The premium for any bonds or insurance beyond our standard coverage and limits will be an addition to the Work Order price set forth in this agreement.

If any drawings, illustrations or descriptive matter are furnished with this proposal, they are approximate and are submitted only to show the general style and arrangement of equipment being offered.

Purchaser shall bear all cost(s) for any reinspection of ThyssenKrupp Elevator Corporation's work due to items outside the scope of this agreement or for any inspection arising from the work of other trades requiring the assistance of ThyssenKrupp Elevator Corporation.

The price of this work described above does not include applicable sales and/or use taxes or fees for necessary permits and/or licenses unless specifically provided for elsewhere in this Work Order. Even in the event that any of those items have been specifically included elsewhere in this Work Order, Purchaser agrees to pay ThyssenKrupp Elevator Corporation, as an extra, for any change in the amount and/or cost of those items as required by any applicable statute, law, or governmental act enacted or modified after the date that ThyssenKrupp Elevator Corporation first submitted this Work Order to Purchaser.

A service charge of 1-½% per month, or the highest legal rate, whichever is more, shall apply to delinquent accounts. In the event of any default of the payment provisions herein, Purchaser agrees to pay, in addition to any defaulted amount, all attorney fees, collection costs or court costs in connection therewith.

In the event a third party is retained to enforce, construe or defend any of the terms and conditions of this Work Order or to collect any monies due hereunder, either with or without litigation, the prevailing party shall be entitled to recover all costs and reasonable attorney's fees.

Purchaser hereby waives trial by jury. Purchaser agrees that this agreement shall be construed and enforced in accordance with the laws of the state where the equipment is located. Purchaser consents to jurisdiction of the courts, both state and Federal, of the state in which the equipment is located as to all matters and disputes arising out of this agreement.

The rights of ThyssenKrupp Elevator Corporation under this agreement shall be cumulative and the failure on the part of the ThyssenKrupp Elevator Corporation to exercise any rights given hereunder shall not operate to forfeit or waive any of said rights and any extension, indulgence or change by ThyssenKrupp Elevator Corporation in the method, mode or manner of payment or any of its other rights shall not be construed as a waiver of any of its rights under this agreement.

In the event any portion of this agreement is deemed invalid or unenforceable by a court of law, such finding shall not affect the validity or enforceability of any other portion of this agreement.

In the event Purchaser's acceptance of the work called for in this Work Order is in the form of a purchase order or other kind of document, the provisions, terms and conditions of this Work Order shall exclusively govern the relationship between the parties.

TKE – WO 03/10

By: _____
(Initial by Authorized Individual)
TK-29-2611-RO

# APPENDIX B

# ThyssenKrupp Elevator
## Americas Business Unit

# Work Order.



ThyssenKrupp

TK-29-2685-RO

| | | | | |
|---|---|---|---|---|
| Date: | 02/11/2013 | Purchaser: | Uba, LLC |
| Location: | Green St. Office Building | Contact Name: | Daniel Uba |
| Address: | 109 Green St. | Title: | Building Owner |
| City: | Fayetteville, NC 28302 | Company: | Uba, LLC |
| Contract #: | 029IE2820 | Address: | 5785 Morganton Road |
| Telephone: | (910)321-6189 | City/ST/ZIP: | Fayetteville, NC 28314 |
| Equipment ID: | (1) Elevator | Phone: | (910)321-6189 |
| RWO Title: | Misc. Elevator Repairs | Facsimile: | |

Purchaser authorizes ThyssenKrupp Elevator Corporation to perform the following described work on the following elevator(s) in the above building:

### MISC. ELEVATOR REPAIRS

TKE will provide the necessary labor and material to perform the following scope of work on (1) elevator:

- Reinstallation of repaired Generator.

- Reinstallation of repaired Exciter.

- Try to get elevator back to working/running service.

**NOTE: This quote and work order is for reinstalling the repaired equipment and continued troubleshooting. Any other parts that may be found bad and need replaced will be quoted as necessary.**

Purchaser agrees to pay the sum of: <u>Thirty-Two Thousand Three Hundred Five ($32,305.00)</u> Dollars which includes all applicable taxes. Delivery and shipping is included. All work is to be performed during regular working days and hours, unless otherwise indicated herein. No permits or inspections by others are included in this work, unless otherwise indicated herein.

To indicate acceptance of this work order, please sign and return one (1) original of this agreement to the address shown below. Upon receipt of your written authorization and required materials and/or supplies, we shall implement the work order.

Unless otherwise stated, you agree to pay as follows: <u>50%</u> upon signed acceptance and <u>50%</u> upon completion.

This Work Order is submitted for acceptance within 30 days from the date executed by ThyssenKrupp Elevator Corporation.

Purchaser's acceptance of this Work Order together with the terms and conditions printed on subsequent pages hereof and which are expressly made a part of this proposal and agreed to, will constitute exclusively and entirely the agreement for the work herein described. All prior representations or agreements regarding this work, whether written or verbal, will be deemed to be merged herein, and no other changes in or additions to this agreement will be recognized unless made in writing and properly executed by both parties. This Work Order specifically contemplates work outside the scope of any maintenance contract currently in effect between the parties; any such contract shall be unaffected by this Work Order.

No agent or employee shall have the authority to waive or modify any of the terms of this agreement without the written approval of an authorized ThyssenKrupp Elevator Corporation manager.

| ThyssenKrupp Elevator Corporation: | Uba, LLC | ThyssenKrupp Elevator Corporation Approval: |
|---|---|---|
| By: _____<br>(Signature of ThyssenKrupp Elevator Representative)<br><br>Jeff Slatcoff<br>Account Manager<br>Return Address: 5995 Chapel Hill Rd. Suite 101<br>Raleigh, NC 27606<br>Tele: (919)851-8557<br>Fax: (866)720-6930<br><br>02/11/2013<br>(Date Submitted) | By: _____<br>(Signature of Authorized Individual)<br><br>_____<br>(Print or Type Name)<br><br>_____<br>(Print or Type Title)<br><br>_____<br>(Date of Approval) | By: _____<br>(Signature of Authorized Individual)<br><br>Chris Boerner<br>(Print or Type Name)<br><br>Branch Manager<br>(Print or Type Title)<br><br>_____<br>(Date of Approval) |

## Terms and Conditions.

ThyssenKrupp Elevator Corporation assumes no responsibility for any part of the elevator equipment except that upon which work has been done under this agreement. No work, service, examination or liability on the part of us other than that specifically mentioned herein is included or intended. It is agreed that ThyssenKrupp Elevator Corporation does not assume possession or control of any part of the equipment and that such remains Purchaser's exclusively as the owner, lessor, lessee, possessor, or manager thereof.

Our performance of this contract is contingent upon your furnishing us with any necessary permission or priority required under the terms and conditions of government regulations affecting the acceptance of this order or the manufacture, delivery or installation of the equipment.

ThyssenKrupp Elevator Corporation has made no examination of, and assumes no responsibility for, any part of the elevator equipment except that necessary to do the work described in this proposal.

It is agreed that ThyssenKrupp Elevator Corporation's personnel shall be given a safe place in which to work and ThyssenKrupp Elevator Corporation reserves the right to discontinue our work in the building whenever, in our sole opinion, this provision is being violated.

You agree that in the event asbestos material is knowingly or unknowingly removed or disturbed in any manner at the job site by parties other than employees of ThyssenKrupp Elevator Corporation or those of our subcontractors, the work place will be monitored, and prior to and during our presence on the job, Purchaser will certify that asbestos in the environment does not exceed .01 fibers per cc as tested by NIOSH 7400. In the event our employees, or those of our subcontractors, are exposed to an asbestos hazard, PCB's or other hazardous substances resulting from work of individuals other than our employees, or those of its subcontractors, you agree to indemnify, defend, and hold ThyssenKrupp Elevator Corporation harmless from any and all claims, demands, lawsuits, and proceedings brought against us, or our employees resulting from such exposure. You recognize that your obligation to ThyssenKrupp Elevator Corporation under this clause includes payment of all attorneys' fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits. Removal and disposal of asbestos containing material is your responsibility.

Unless otherwise agreed, it is understood that the work will be performed during regular working hours of the trades involved. If overtime is mutually agreed upon, an additional charge at our usual rates for such work shall be added to the contract price.

In consideration of ThyssenKrupp Elevator Corporation performing the services herein specified, Purchaser expressly agrees to indemnify, defend, save harmless, discharge, release and forever acquit ThyssenKrupp Elevator Corporation, its employees, officers, agents, affiliates, and subsidiaries from and against any and all claims, demands, suits, and proceedings brought against ThyssenKrupp Elevator Corporation, its employees, officers, agents, affiliates and subsidiaries for loss, property damage (including damage to the equipment which is the subject matter of this Work Order), personal injury or death that are alleged to have been caused by the Purchaser or any others in connection with the presence, use, misuse, maintenance, installation, removal, manufacture, design, operation or condition of the equipment covered by this Work Order, or the associated areas surrounding such equipment. Purchaser's duty to indemnify does not apply to the extent that the loss, property damage (including damage to the equipment which is the subject matter of this Work Order), personal injury or death is determined to be caused by or resulting from the negligence of ThyssenKrupp Elevator Corporation and/or its employees. Purchaser recognizes that its obligation to ThyssenKrupp Elevator Corporation under this clause includes payment of all attorney's fees, court costs, judgments, settlements, interest and any other expenses of litigation arising out of such claims or lawsuits.

Insurance. Purchaser expressly agrees to name ThyssenKrupp Elevator Corporation along with its officers, agents, affiliates and subsidiaries as additional insureds in Purchaser's liability and any excess (umbrella) liability insurance policy(ies). Such insurance must insure ThyssenKrupp Elevator Corporation, along with its officers, agents, affiliates and subsidiaries for those claims and/or losses referenced in the above paragraph, and for claims and/or losses arising from the sole negligence or responsibility of ThyssenKrupp Elevator Corporation and/or its officers, agents, affiliates and subsidiaries. Such insurance must specify that its coverage is primary and non-contributory. Purchaser hereby waives the right of subrogation.

ThyssenKrupp Elevator Corporation shall not be liable for any loss, damage or delay caused by acts of government, labor, troubles, strikes, lockouts, fire, explosions, theft, riot, civil commotion, war, malicious mischief, acts of God, or any cause beyond its control, and in no event shall ThyssenKrupp Elevator Corporation be liable for any consequential, special, or indirect damages. ThyssenKrupp Elevator Corporation shall automatically receive an extension of time commensurate with any delay regarding the work called for in this Work Order and Purchaser expressly agrees to release and

Uba, LLC

TKE – WO 03/10                                        By: _____
                                                            (Initial by Authorized Individual)
                                                            TK-29-2685-RO

TKE/SUPP 000024

# Work Order.

discharge ThyssenKrupp Elevator Corporation from any and all claims for consequential, special or indirect damages arising out of the performance of this Work Order.

Should loss of or damage to ThyssenKrupp Elevator Corporation's material, tools or work occur at the erection site, Purchaser shall compensate ThyssenKrupp Elevator Corporation therefore, unless such loss or damage results from our own acts or omissions.

Purchaser agrees that all existing equipment removed by ThyssenKrupp Elevator Corporation shall become the exclusive property of ThyssenKrupp Elevator Corporation.

ThyssenKrupp Elevator Corporation retains title to all equipment supplied by us under this contract, and a security interest therein, (which, it is agreed, can be removed without material injury to the real property) until all payments under the terms of this contract, including deferred payments and any extension is thereof, shall have been made. In the event of any default by you in the payment, under any other provision of this contract, ThyssenKrupp Elevator Corporation may take immediate possession of the manner of its attachment to the real estate or the sale, mortgage, or lease of the real estate. Pursuant to the Uniform Commercial Code, at ThyssenKrupp Elevator Corporation's request, Purchaser agrees to join with ThyssenKrupp Elevator Corporation in executing any financing or continuation statements, which may be appropriate for us to file in public offices in order to perfect our security interest n such equipment.

Certificates of Workmen's Compensation, Bodily Injury and Property Damage Liability Insurance coverage will be furnished to purchaser only upon written request. The premium for any bonds or insurance beyond our standard coverage and limits will be an addition to the Work Order price set forth in this agreement.

If any drawings, illustrations or descriptive matter are furnished with this proposal, they are approximate and are submitted only to show the general style and arrangement of equipment being offered.

Purchaser shall bear all cost(s) for any reinspection of ThyssenKrupp Elevator Corporation's work due to items outside the scope of this agreement or for any inspection arising from the work of other trades requiring the assistance of ThyssenKrupp Elevator Corporation.

The price of this work described above does not include applicable sales and/or use taxes or fees for necessary permits and/or licenses unless specifically provided for elsewhere in this Work Order. Even in the event that any of those items have been specifically included elsewhere in this Work Order, Purchaser agrees to pay ThyssenKrupp Elevator Corporation, as an extra, for any change in the amount and/or cost of those items as required by any applicable statute, law, or governmental act enacted or modified after the date that ThyssenKrupp Elevator Corporation first submitted this Work Order to Purchaser.

A service charge of 1 ½% per month, or the highest legal rate, whichever is more,, shall apply to delinquent accounts. In the event of any default of the payment provisions herein, Purchaser agrees to pay, in addition to any defaulted amount, all attorney fees, collection costs or court costs in connection therewith.

In the event a third party is retained to enforce, construe or defend any of the terms and conditions of this Work Order or to collect any monies due hereunder, either with or without litigation, the prevailing party shall be entitled to recover all costs and reasonable attorney's fees.

Purchaser hereby waives trial by jury. Purchaser agrees that this agreement shall be construed and enforced in accordance with the laws of the state where the equipment is located. Purchaser consents to jurisdiction of the courts, both state and Federal, of the state in which the equipment is located as to all matters and disputes arising out of this agreement.

The rights of ThyssenKrupp Elevator Corporation under this agreement shall be cumulative and the failure on the part of the ThyssenKrupp Elevator Corporation to exercise any rights given hereunder shall not operate to forfeit or waive any of said rights and any extension, indulgence or change by ThyssenKrupp Elevator Corporation in the method, mode or manner of payment or any of its other rights shall not be construed as a waiver of any of its rights under this agreement.

In the event any portion of this agreement is deemed invalid or unenforceable by a court of law, such finding shall not affect the validity or enforceability of any other portion of this agreement.

In the event Purchaser's acceptance of the work called for in this Work Order is in the form of a purchase order or other kind of document, the provisions, terms and conditions of this Work Order shall exclusively govern the relationship between the parties.

TKE – WO 03/10

Uba, LLC

By: _____

(Initial by Authorized Individual)
TK-29-26BS-RO

TKE/SUPP 000025